UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BRANDON DESHAWN JOHNSON,

    Defendant.
_____/

Case No. 21-20480

HON. GEORGE CARAM STEEH

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE (ECF NO. 18)

This matter is before the court on defendant Brandon Deshawn Johnson's motion to suppress evidence seized following a vehicle stop on May 24, 2021. Defendant's motion asserts that the police lacked probable cause to stop his vehicle, therefore evidence obtained following the improper traffic stop was in violation of the Fourth Amendment. The Court heard testimony from two police officers and oral argument by counsel via video conference on January 11, 2022. Following argument, the Court permitted the parties the opportunity to submit supplemental pleadings to address the legality of the inventory search. The Court has received and read the supplemental submissions and is now ready to rule on defendant's

motion to suppress. For the reasons stated in this opinion and order, defendant's motion to suppress is DENIED.

## STATEMENT OF FACTS

On May 24, 2021, at approximately 4:25 p.m., Officers Dodd and Kosa, from the Detroit Police Department's Seventh Precinct Cease-Fire Unit, were on routine patrol in the area of Burns Street in Detroit, Michigan. When the officers turned their patrol car onto Burns Street, they observed multiple vehicles legally parked on both sides of the street. They also observed a pedestrian standing in the road and a Red Chevrolet Malibu stopped in the middle of the road. Because cars were parked on both sides of the street, another vehicle would not have been able to pass by either side of the stopped Malibu. In fact, the officers' patrol car was not able to pass by the Malibu.

As the patrol car pulled up behind the Malibu, the pedestrian told the driver of the Malibu to move the car out of the way. Within approximately 5 seconds of the patrol car coming to a stop behind the Malibu, the Malibu began to move forward and slowly drive toward the curb on the right side of the street. Just after the Malibu started to roll forward, Officer Dodd activated the patrol car's emergency lights with the intention of initiating a traffic stop for impeding traffic.

The Malibu came to a stop along the curb. Officer Dodd exited the patrol car and approached the driver's side door of the Malibu. He indicated that defendant, the driver of the Malibu, should place the car in park and roll down his window. At this point, Dodd recognized defendant from a prior investigation. Dodd asked defendant to produce his license and proof of insurance. Defendant told Officer Dodd he was waiting for his nieces and nephew to come out of their house. Defendant did not produce a driver's license or proof of insurance and he told Dodd that he was not the owner of the Malibu. Defendant identified the owner of the vehicle as Chenille Hill, a woman who was near the scene on the front lawn. Ms. Hill confirmed to Officer Dodd that she had allowed defendant to drive her car.

The officers conducted a routine check of the Law Enforcement Information Network (LEIN) and learned the Malibu was uninsured. They requested a tow truck and proceeded to perform an inventory search of the Malibu. The Officer Dodd entered the passenger side of the Malibu and began by searching through various bags and containers on the vehicle floor. He then reached toward the center console and can be heard opening and closing the compartment. From the body camera footage, it can be seen that the plastic molding surrounding the gear shift area is not attached to its base. Dodd apparently noticed and lifted the gear shift cover, where he observed a firearm hidden inside the gearshift cavity.

After discovering the firearm, Dodd asked defendant if he has a CPL. Defendant did not admit to having a firearm or a CPL. Dodd advised another officer that there was a weapon in the Malibu and instructed the officer to secure defendant in a patrol vehicle. Dodd then reentered the Malibu from the driver's side of the vehicle and pulled the firearm out of the gearshift cavity. Upon finishing the inventory search, Dodd completed two impound cards and provided one to the tow truck driver.

Officer Dodd told Ms. Hill that her car was going to be impounded because she did not have insurance and because a firearm was found inside the car. Both officers testified that because the vehicle was uninsured they could not leave it parked on the roadway, nor could they permit it to be driven even a short distance to a private driveway. Officer Kosa issued a citation to defendant for impeding traffic, driving with a suspended license, and driving a vehicle without insurance.

## ANALYSIS

I.   Probable Cause for Traffic Stop

A police officer may lawfully stop a vehicle when he has probable cause to believe a civil traffic infraction has occurred. *Whren v. United States*, 517 U.S. 805, 810 (1996). Here, no matter how innocent defendant's reasons were for stopping in the middle of the street, the Malibu was blocking the normal flow of traffic from both directions. The

- 4 -

dashcam video, as well as the testimony of Officers Dodd and Kosa, demonstrates that even the police were forced to wait for defendant to move the car before they could travel through the area.

Defendant argues this was an illegal pretext stop because Officer Dodd was investigating a recent shooting in which defendant was a victim and a suspect. Here, Dodd did not realize that the driver of the Malibu was defendant until after he approached the vehicle after initiating the traffic stop. Furthermore, a stop based on probable cause is reasonable regardless of what else the officer might have known about the driver at the time of the stop. *United States v Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

Defendant next argues that he could not have been impeding traffic where there was no actual traffic at the time of the alleged offense. This is simply not true where the Malibu was preventing the patrol car from driving down the street. Furthermore, an impediment to actual traffic is not required. MCL § 257.676b(1); *People v. Salters*, 2001 WL 765852 at *2 (Mich. App. Jan. 26, 2001).

Defendant moved very quickly after realizing another car was unable to pass by from behind him. However, by the time defendant moved his car, the offense of impeding traffic had already occurred. The police officers had probable cause that a civil traffic violation had occurred, giving them sufficient legal basis to stop the Malibu.

II.     Impoundment of Vehicle was Reasonable

Police may "exercise discretion when deciding to impound a vehicle so long as the determination is based on standard criteria and not solely on the suspicion of evidence of criminal activity." *United States v Jackson*, 682 F. 3d 448, 454 (6th Cir. 2012). The decision to impound a vehicle that is objectively justifiable is permitted under the Fourth Amendment, regardless of an officer's subjective intent. *See United States v. Kimes*, 246 F. 3d 800, 805 (6th Cir. 2001).

In this case there are several reasons to support a finding that the officers' decision to impound the vehicle was objectively reasonable. First, the Malibu was uninsured and located on a public roadway. Under Michigan law, the officers could not allow a licensed driver to move the uninsured vehicle to another location. MCL 500.3102. Therefore, even though the owner of the Malibu was on the scene, the car was uninsured and could not legally be driven, no matter the distance or circumstances. Second, impoundment was permitted under Mich. Comp. Laws § 257.252(d)(1) and Detroit Police Department Towing/Impound Manual (2019 Directive 204.4). The reasons include (1) reasonable cause to suspect the car had been involved in a crime, namely operating without insurance in violation of MCL 500.3102; (2) to prevent damage to the car if

left on the roadside; and (3) to provide access to garbage cans by the waste disposal company under MCL 257.252d(1)(b).

Under these circumstances, the officers' decision to impound the Malibu was consistent with Michigan law and PDP policy.

III.   Lawful Inventory Search

Prior to impounding a vehicle, police may conduct an inventory search. *United States v. Smith*, 510 F. 3d 641, 650 (6th Cir 2007) (distinguished on other grounds). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren,* 517 U.S. at 811. An inventory search must be conducted according to standard police procedures and not for the purpose of further investigation. *Smith*, 510 F. 3d at 651. However, the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search. *Id*. "[O]fficers may exercise some judgment based on concerns related to the purpose of an inventory search; for example, they may decide to open particular containers if they cannot determine the contents." *United Stated v Tackett*, 486 F. 3d 230, 232 (6th Cir. 2007).

DPD Directive 204.4-11 provides that a member of the DPD shall inventory a vehicle prior to it being towed. It further provides that any area

of the vehicle may be checked, including inside containers. In this case Officer Dodd legally searched the Malibu to ensure that its contents were harmless, to protect against false claims of loss or damage, and to secure valuable items. He searched areas that were in plain sight, including the door, the footwell and the passenger seat. He also searched areas that were not visible, including inside the center console. Upon observing that the plastic molding around the gearshift was askew, Officer Dodd exercised reasonable judgment in lifting the casing and looking inside the cavity. *See United States v. Jackson*, 682 F. 3d 448 (6th Cir. 2012); *United States v. Edwards*, 577 F. 2d 883 (5th Cir. 1978). Dodd's search was conducted in accordance with law and DPD policy and accomplished the goals of an inventory search.

Regarding the cataloging of contents of the vehicle, DPD impound policy states that two original copies of an Impounded Vehicle Card must be completed. DPD Directive 204.4-9. This requirement was complied with by Officer Dodd. The Directive does not require that the cataloging of contents be conducted simultaneously with the search of the vehicle.

## CONCLUSION

For the reasons set forth in this opinion and order,

IT IS HEREBY ORDERED that defendant's motion to suppress evidence (ECF No. 18) is DENIED.

It is so ordered.

Dated: March 7, 2022

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 7, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk